## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                       Case No. 17-20701

v.                                  Hon. Denise Page Hood

BERNARD SHELTON,

      Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR FOR NEW TRIAL [ECF NO. 205]

### I.    INTRODUCTION

Now, before the Court, is Defendant, Bernard Shelton's, Motion for judgment of Acquittal or New Trial. [ECF No. 205]. On November 17, 2023, the Government filed a response to Shelton's motion. [ECF No. 210]. Almost two months later, the Government filed an amended response to which Shelton did not object. [ECF No. 214]. The motion is fully briefed.[1]

### II.    BACKGROUND

_____

[1] On July 29, 2024, following sentencing, the Court received several letters in support of Shelton from members of a bible study group that Shelton is a part of. The letters were received via mail. The Court has reviewed the letters and provided copies to attorneys for all parties.

Following a twelve-day trial, a jury found Shelton guilty of twenty-one counts of unlawful distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1) which includes a death resulting from the use of a controlled substance enhancement under 21 U.S.C. § 841(b)(1)(C). [ECF No. 214, PageID.4239]. Shelton now requests that the Court set aside the guilty verdict pursuant to Federal Rule of Criminal Procedure 29. [ECF No. 205, PageID.4105]. Specifically, Shelton argues that he is entitled to acquittal on all counts because the evidence is insufficient to sustain a conviction. *Id*. at PageID.4115.

## III.   ANALYSIS

### a. Motion for Acquittal

21 U.S.C. § 841(a) makes it "unlawful for any person knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" To "dispense" means to "deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for such delivery." 21 U.S.C. § 802(10). "The term 'practitioner' means a physician[.]" In order to dispense controlled substances, a physician must register with the DEA. 21 C.F.R. § 1301.11(a). Registration authorizes a physician to prescribe a controlled substance "for a legitimate medical

2

purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). "[F]or purposes of a criminal conviction under § 841, [the Government must prove] that a defendant knew or intended that his or her conduct was unauthorized. *Ruan v. United States*, 597 U.S. 450, 467, 142 S. Ct. 2370, 2382, 213 L. Ed. 2d 706 (2022). Shelton argues that the evidence is insufficient to support conviction on all counts.

Federal Rule of Criminal Procedure 29 requires that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." The Court must consider whether "viewing the evidence in the light most favorable to the prosecution, any rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Circumstantial evidence and direct evidence are accorded the same weight and the uncorroborated testimony of an accomplice may support a conviction under federal law." *United States v. Sherlin*, 67 F.3d 1208, 1214 (6th Cir. 1995). "Substantial evidence is more than just a scintilla. *Id*. "It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Id*.

## 1.  James Howard

Counts 1, 3, and 5 charge Shelton with unlawfully prescribing James Howard with 90 tablets of hydrocodone bitrate/acetaminophen (7.5 mg/325 mg), a schedule II substance, on April 1, May 1, and June 15, 2015. [ECF No. 17, PageID.37]. Counts 2, 4, and 6 charge Shelton with unlawfully prescribing Howard 60 tablets of alprazolam (0.5 mg), a schedule IV substance, on April 1, May 1, and June 15, 2015. *Id.* The Government presented evidence that Shelton falsified Howard's patient chart by stating that he denied drinking alcohol even though Howard told Shelton he drank moonshine. The Government also provided evidence that Shelton failed to conduct a physical exam and simply asked Howard "what can I give you today to help you out." *Id.* at PageID.4244. The Government argues that Shelton prescribed controlled substances to James Howard despite knowing that he was a doctor shopper and against his claimed professional practice. *Id.* at PageID.4245.

Shelton now contends that the substances prescribed to Howard were consistent with the issues Howard reported in his first visit. [ECF No. 205, PageID.4118]. Shelton contends that Howard reported back and nerve problems, taking two Xanax tablets per day, trouble sleeping, unbearable pain in the form of stiffness, and that taking medication relieved his pain. *Id.* Shelton asserts that Howard's complaint of low back pain is common for truck drivers, hydrocodone is a weak opioid, and the one prescription for pain medicine from a doctor four months prior was not a clear indication that Hoard was doctor shopping. *Id.* at PageID.4119.

Shelton also argues that "Howard was already prescribed these medications according to the MAPS [Michigan Automated Prescription System] report" making his requests for the prescriptions less of a red flag. *Id*. at PageID.4120. It is Shelton's position that "[l]ogically, there can be nothing suspect about a patient identifying and requesting a medication he is already prescribed." *Id*.

Shelton's conclusion is faulty. On these facts and testimony, a reasonable juror could conclude that Howard sought Shelton's office because he was unable to get the prescription from the doctor who previously prescribed it. The record reflects that Shelton's office was about sixty miles away from Howard's address which could indicate that Howard could no longer get the prescriptions from doctors in his area. What stands out is that Shelton disregarded that Howard reported to drink alcohol and Shelton's willingness to consistently prescribe Howard drugs that he had not recently been prescribed.

The Government called Drug Enforcement Administration Special Agent Jennell Boggs as a witness. [ECF No. 170, PageID.2879]. Agent Boggs testified that she was the lead investigator regarding Shelton. *Id*. at PageID.2883. As part of that investigation, Agent Boggs interviewed Shelton on September 29, 2015. *Id*. at PageID.2883-84. In preparation for the interview, Agent Boggs testified that she reviewed the undercover visits of James Howard to Shelton's office and noticed that the undercover "presented with dirty MAPS," Shelton failed to conduct a physical

exam, the "patient asked for a highly abused narcotic by name, and the undercover was prescribed a highly abused combination of a narcotic and a benzodiazepine." *Id.* at PageID.2886. Agent Boggs explained that a dirty MAPS would show that a "patient goes to various different doctors to get more controlled substances than they would be able to get if they just went to one doctor[.]" *Id.* at PageID.2887. This behavior is also referred to as "doctor shopping." *Id.*

Agent Boggs recounted that the patient information provided by Shelton in the interview contradicted the information provided by Howard during the patient visits. *Id.* at PageID.2895. Agent Boggs' testimony was supported by Howard's testimony. A reasonable juror could conclude that Shelton knew that he was not authorized to prescribe the medications to Howard. Shelton's motion for a judgment of acquittal is denied as to James Howard.

### 2. Dennis Hoey

Count 7 charges Shelton with unlawfully prescribing Dennis Hoey 180 tablets of oxycodone (15 mg), a schedule II substance, on January 14, 2016. [ECF No. 17, PageID.38]. Count 8 charges Shelton with unlawfully prescribing Hoey 90 tablets of alprazolam (1 mg), a schedule IV substance, on January 14, 2016. *Id.*[2] Hoey

---

[2] "For purposes of this motion, [Shelton does] not contest that the government offered sufficient evidence for Rule 29 purposes to establish a but-for causation for a reasonable jury to find that the oxycodone prescription was the cause of Hoey's

presented with chronic back pain, resulting from a two-story fall when he was 18 years old. [ECF No. 205, PageID.4125]. Years later, Hoey sustained further injuries which made him unable to work. *Id*. Shelton treated Hoey for five years. Hoey's previous doctor was prescribing him Motrin 800's. *Id*. Shelton consistently prescribed Hoey opioids despite the fact that Hoey consistently failed the drug tests administered at each visit in the months leading up to his death. According to Shelton, he continued to prescribe the medication because it "worked reasonably well for a few years[.]". *Id*. at PageID.4126. Shelton continued to prescribe the medication even though he knew Hoey was not taking it as prescribed. *Id*. Shelton asserted that it was his own practice to stop prescribing after a second failed drug test, which he failed to adhere to in the case of Hoey. A reasonable juror could conclude that Shelton was fully aware of Hoey's addiction, continued prescribing the medication to feed his addiction, and knew that he was unauthorized to do so. Therefore, Shelton's motion for acquittal is DENIED as to Dennis Hoey.

### 3. Bonnie Eubanks

Count 9 charges Shelton with unlawfully prescribing Bonnie Eubanks with 90 tablets of alprazolam (1 mg), a schedule IV substance, on January 14, 2016. [ECF

---

death" because "sufficiency on the causing-death enhancement is immaterial unless a reasonable jury could find that Dr. Shelton prescribed the oxycodone outside the usual course of medical practice." [ECF No. 205, PageID.4124-25].

No. 17, PageID.39]. Count 10 charges Shelton with unlawfully prescribing Eubanks 120 tablets of oxycodone (30 mg), a schedule II substance, on March 25, 2016. *Id.* As discussed earlier, it was against Shelton's stated practice to prescribe oxycodone as evidenced from the sign on the wall at his office. His prescribing of Oxycodone to Eubanks could indicate that he was knowingly prescribing the opiate outside of his authorization and for a purpose other than a legitimate medical one. The Government presented evidence showing that Eubanks had a history of opioid abuse [ECF No. 163, PageID.2408] prior to starting treatment with Shelton. The record also shows that the alleged prescriptions were provided following a visit to Henry Ford Health Systems where the treating physician noted that Eubanks appeared to have "track marks." *Id.* at PageID.2418-19; GX 3:046. While Eubanks denied being an intravenous drug user, Marc Bielak, Eubanks' long-time boyfriend, confirmed that she was in fact injecting drugs. [ECF No. 163, PageID.2419]. A reasonable juror could have concluded that as a health professional, a notation of track marks would be a clear indicator that Eubanks was using drugs. Further, Eubanks had been diagnosed with hepatitis C, another indicator of using needles. While Eubanks may have been reporting pain due to arthritis, Dr. Daniel Berland, a physician in general internal medicine and chronic pain and addiction,  stated that "it was not possible for Dr. Shelton to treat [Eubanks] safely" because she was taking nonprescribed drugs. [ECF No. 205, PageID.4131]. Shelton argues that criminal liability does not turn on

the mental state of a hypothetical reasonable doctor or his deviation from what his fellow doctors would view with medical care. *Id*. at PageID.4132. Nevertheless, the Sixth Circuit held that deliberate ignorance speaks to knowledge of a defendant. *United States v. Hofstetter*, 80 F.4th 725, 731 (6th Cir. 2023), cert. denied sub nom. *Womack v. United States*, 144 S. Ct. 603, 217 L. Ed. 2d 322 (2024), and cert. denied sub nom. *Clemons v. United States*, 144 S. Ct. 610, 217 L. Ed. 2d 326 (2024), and cert. denied sub nom. *Newman v. United States*, 144 S. Ct. 612, 217 L. Ed. 2d 326 (2024), and cert. denied, 144 S. Ct. 612, 217 L. Ed. 2d 327 (2024). (Upholding a jury instruction stating "[i]f you find that a defendant deliberately ignored a high probability that the controlled substances…were distributed outside of professional practice and not for a legitimate medical purpose, then you may find that the defendant knew that this was the case."). The evidence shows that Shelton was put on alert that Eubanks was using non-prescribed drugs and that he never cut her off from receiving opioids from him. The evidence also shows that Eubanks failed several drugs tests without recourse from Shelton. Therefore, there is enough evidence to support Shelton's conviction as to Bonnie Eubanks and his motion for acquittal is DENIED as to Bonnie Eubanks.

### 4. Amber Lang

Count eleven charges Shelton with unlawfully prescribing Amber Lang 120 tablets of hydrocodone bitrate/acetaminophen (10 mg-325 mg) a schedule III

substance, on April 30, 2014. [ECF No. 17, PageID.39]. Count twelve charges Shelton with unlawfully prescribing Lang 120 tablets of alprazolam (2 mg) a schedule IV substance, on May 6, 2014. *Id*. Count 13 charges Shelton with unlawfully prescribing Lang 150 tablets of carisoprodol (350 mg) a schedule IV substance, on April 30, 2014. *Id*. Lang reported having back and knee pain as well as anxiety. Government's Exhibit 4. The Government argues that despite Shelton's assertion that he tested all of his patients; Lang's chart does not include a single urine test. [ECF No. 214, PageID.4254]. Shelton argues that "he had no legal duty to perform such tests." [ECF No. 205, PageID.4136]. Yet, Shelton repeatedly argues that the standard for culpability "does not turn on the 'mental state of a hypothetical reasonable doctor' or the defendant's deviation from what 'his fellow doctors would view with medical care," rather, it is a subjective analysis of whether Shelton himself deviated from his own professional practice. *Id*. at PageID.4144.

Shelton also claimed that he refused to take patients with dirty MAPS. [ECF No. 214, PageID.4254]. Yet, Lang's MAPS showed that she had been to nine different doctors to receive her medications prior to seeing Shelton and that some of the prescription dates overlapped one another. [ECF No. 171, PageID.3085-90]. A reasonable juror could conclude that Lang was a doctor shopper, and that Shelton knew this. Further, one could conclude that Shelton prescribed the drugs to Lang for the purpose of feeding addiction as opposed to treating the pain in her back and neck.

While Dr. Berland testified that it is not necessarily right to screen out patients because they appear to have a drug problem, prescribing patients the same drugs because they ask for it cannot be considered practicing medicine. *Id*. at PageID.3089]. There is enough evidence to show that Shelton knew that he was unauthorized to prescribe the medications to Lang. Shelton's motion for acquittal must be DENIED as to Amber Lang.

### 5.  George Regul

Counts 14 and 15 charge Shelton with unlawfully prescribing Regul 120 tablets of oxycodone (20 mg), a schedule II substance, on January 5, and April 1, 2015. [ECF No. 17, PageID.39]. Regul was a four- or five-year patient who went to Shelton to gain relief from back pain. [ECF No. 159, PageID.2257]. Shelton initially told Regul that he needed to see a back surgeon, but Regul pushed back stating that he already saw some and "their response to [him] was they wouldn't touch [him]." *Id*.  Shelton prescribed Regul with stronger medications than those he had been receiving in the past. *Id*. Regul testified that the medications prescribed by Shelton "created an addition[.]" *Id*. at PageID.2258. He also testified that he would often take the medication too fast, causing him to run out of pills and go through withdrawal. *Id*. at PageID.2258-59. Regul further testified that he got drugs off of the street to hold him over until his next appointment with Shelton. *Id*. at PageID.2260. Regul further testified that there were many occasions when he did

not see Shelton. Instead, he could just show up to the office, talk to the nurse, get his prescription and leave. *Id*. at PageID.2261. Even when Regul would run out of his prescriptions, Shelton continued to write him prescriptions for more. *Id*. at PageID.2263. Regul overdosed on heroine weeks prior to the prescriptions at issue. *Id*. at PageID.2266. That information was provided to Shelton and yet Shelton still prescribed Regul more oxycodone. *Id*. at PageID.2267.

Shelton's continuous prescribing of oxycodone to Regul despite his consistent disregard for the safety of his own life is enough circumstantial evidence for a reasonable juror to find that Shelton knew that he was unauthorized to continue prescribing substances to Regul. Shelton's motion for acquittal is DENIED as to George Regul.

### 6. April Powell

Count 16 charges Shelton with unlawfully prescribing April Powell with 90 tablets of oxycodone (30 mg), a schedule II substance, on January 30, 2015. [ECF No. 17, PageID.39]. Count 17 charges Shelton with unlawfully prescribing Powell with 60 tablets of diazepam (10 mg), a schedule IV substance, on January 6, 2015. *Id*. Count 18 charges Shelton with unlawfully prescribing Powell with 60 tablets of alprazolam (2 mg), a schedule IV substance, on December 3, 2014. *Id*. It is undisputed that Powell suffers from chronic pain. Powell was a cocaine user, and

that fact was known by Shelton. Government's Exhibit 6:33. The Government presented evidence that Shelton failed to follow his own policy of giving Powell time to correct and then to stop prescribing substances. [ECF No. 214, PageID.4259]. A reasonable juror could conclude that Shelton continued to prescribe Powell dangerous substances knowing that she abused drugs. See Government's Exhibits 4:83, 89, 5, 11, 16, and 49. Shelton's motion for acquittal is DENIED as to April Powell.

### 7.  Ronald Hannaford

Count 19 charges Shelton with unlawfully prescribing Ronald Hannaford 90 tablets of hydrocodone/bitartrate/acetaminophen (10 mg – 325 mg), a schedule II substance, on October 1, 2015. [ECF No. 17, PageID.40]. Count 20 charges Shelton with unlawfully prescribing Hannaford 60 tablets of morphine sulfate ER (100 mg), a schedule II substance, on October 1, 2015. *Id*. Count 21 charges Shelton with unlawfully prescribing Hannaford 60 tablets of alprazolam (1 mg), a schedule IV substance, on October 1, 2015. *Id*. Similar to Powell, the Government presented evidence that Hannaford was a confirmed heroin user and had been treated in a drug treatment program. [ECF No. 214, PageID.4260]. While Shelton argues that he was just more willing to tolerate risk in treating patients, the Government presented evidence that could lead a reasonable juror to conclude that Shelton knew that he

was not authorized to continue prescribing substances to Hannaford. Shelton's motion for acquittal is DENIED as to Hannaford.

### b. Motion for New Trial

Alternatively, Shelton seeks a new trial under Rule 33, claiming (1) the arguments advanced in support of acquittal, especially as to the inaccurate presentation of the evidence on the counts regarding Hoey, merit a new trial, (2) the jury instructions incorrectly defined the scope of a doctor's authorization under the Controlled Substances Act ("CSA"), (3) the jury instructions failed to adequately convey §841's mens rea, and (4) requiring witnesses to wear masks violated Shelton's right to confront witnesses against him. [ECF No. 205]. Rule 33 allows a district court to "vacate any judgment and grant a new trial if the interest of justice so requires.

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). When faced with a Rule 33 motion, unlike a motion for judgment of acquittal under Rule 29, the district court may weigh the evidence and assess the credibility of the witnesses; "[i]t has often been said that [the trial judge] sits as a thirteenth juror" when considering a Rule 33 motion. *United states v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998). A motion for new

14

trial is premised on the argument that the jury's verdict was against the manifest weight of the evidence. *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007). Such motions are generally granted only in extraordinary circumstances where the evidence preponderates heavily against the verdict. *Id*. at 592-93. In general, motions for new trial are disfavored and should be granted with caution. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). The defendant bears the burden of proving that a new trial is warranted. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994).

### 1.  Sufficiency of the Evidence/Witness Credibility

Viewing the evidence as the "thirteenth juror," the Court finds that the jury's verdict was not against the great weight of the evidence presented at trial. As the Court makes clear above, the Government presented sufficient evidence to support a finding that Shelton violated 21 U.S.C. § 841 by knowingly prescribing substances outside of his authorization. Former patients, close family members of patients, and Agent Boggs testified that Shelton consistently prescribed dangerous substances to individuals who he knew routinely abused their prescriptions. Shelton prescribed the substances even after the patients violated his own policies like failing multiple drug tests and supplementing their prescriptions with street narcotics. Shelton further prescribed substances like oxycodone which a sign in his office specifically said he does not prescribe. The Court finds the witnesses to be credible. Therefore, the evidence was sufficient to find Shelton guilty of the crimes alleged.

15

Specifically focusing on the Count 7 enhancement, the Court finds that the testimony of Carol Kratz shows that Hoey had a history of abusing his prescriptions. She testified that she accompanied her husband to the pharmacy to fill his prescriptions every time he came back from seeing the doctor. [ECF No. 164, PageID.2517]. She further testified that she had to take his pills away from him because she was scared that he would overdose. *Id*. at PageID.2518-19. Specifically, Ms. Kratz testified that she "caught him one time waking up to go get more medicine after he had just taken some." *Id*. at PageID.2519.

The Government presented evidence that Shelton increased Hoey's oxycodone prescription days before his death from 10 mg to 15 mg. Government's Exhibit 2, Page 136. Shelton argues that the January 14 prescription was actually a decrease in the prescription because the original prescription was 180 tablets of oxycodone 10 mg to be taken over 30 days (6 tablets per day) and the January 14 prescription was 180 tablets of oxycodone 15 mg to be taken over 60 days. [ECF No. 205, PageID.4127; Government's Exhibit 59, Page 5]. Hoey's patient chart shows that the 15 mg tablets were to be taken at the same rate as the 10 mg tablets. See Government's Exhibit 2, Page 136; Government's Exhibit 21. Shelton's handwritten prescription shows that Hoey was prescribed two 15 mg tablets every eight hours: the same rate as the 10 mg tablets. This came after Hoey failed multiple

drug tests. Shelton states "I will go ahead and examine the patient" but fails to document any results of examination to support an increase in dosage.

The evidence shows that Shelton was consistently put on notice that Hoey was abusing his medication and continued to prescribe him dangerous narcotics. The evidence further supports that the substances prescribed by Shelton were a but-for cause of Hoey's death. Therefore, the evidence is sufficient to support the conviction of the Count 7 enhancement.

### 2. The jury instructions correctly defined the term "authorization.

Shelton challenges the Court's jury instruction defining "authorization." [ECF No. 205, PageID.4145]. Specifically, Shelton argues that that the Court committed fatal error by instructing the jury that "[a] a doctor is authorized to issue a prescription if he does so for a legitimate medical purpose in the usual course of professional service." *Id*. at PageID.4146. Shelton contends that the instruction tethers authorization to the regulatory criteria for a valid prescription rather than the statutory requirements for authorization. *Id*. Shelton believes that such tethering unreasonably displaces authority for defining the scope of criminal prohibitions from the legislature to the Attorney General. *Id*. Shelton encourages the Court to delve deeply into the statutory interpretation of § 841, relying on Justice Alito's concurrence in *Ruan v. United States*, 597 U.S. – ; 142 S. Ct. 2370 (2022). The Court declines to do so. The plain language of the CFR and *Ruan* are clear that a

prescription must have a "legitimate medical purpose" and when they do not, they are unauthorized. See 21 C.F.R. § 1306.04(a); *Ruan*, 142 S.Ct. at 2382; *United States v. Moore*, 423 U.S. 122, 136 at n.12 (1975). Further 21 U.S.C. § 822(a)(2) specifically grants the Attorney General the authority to promulgate the rules and regulations related to registration of authorized distributors of controlled substances.

Shelton urges the Court to apply Justice Alito's "in good faith" definition to the meaning of the term authorization. [ECF No. 205, PageID.4147] see also 142 S. Ct. at 2389. However, the *Ruan* majority opinion clearly rejected the "good faith" view. The court concluded that "[f]or one thing, § 841, like many criminal statutes, uses the familiar *mens rea* words 'knowing or intentionally.' It nowhere uses such words as 'good faith,' 'objectively,' 'reasonable,' or 'honest effort.'" *Id*. at 2381. The court further concluded that "the regulation defining the scope of a doctor's prescribing authority does so by reference to objective criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice.' *Id*. Therefore, the Court finds that the jury instructions related to the definition of the term "authorized" is in line with the regulations and case law. Shelton's motion for a new trial is DENIED on this point.

### 3.  The jury instructions adequately conveyed § 841's *mens rea*.

Shelton also argues that the jury instructions failed to adequately convey §

841's *mens rea*. Shelton relies on *Ruan* which states noting that "the government

bears the burden of 'proving that a defendant knew or intended that his or her

conduct was unauthorized.'" [ECF No. 205, PageID.4154]. Shelton further asserts

that "*Ruan* clarified that once a defendant produces evidence that he falls within the

authorization exception, the Government has the burden of proving lack of

authorization – that a defendant knew or intended that his conduct was unauthorized

– beyond a reasonable doubt. *Id*. This concept was adequately conveyed in the

Court's jury instructions stating:

> In order to find the defendant Bernard Shelton guilty of one or more of
> the crimes charged in the Count 1 through 21, you must find that the
> government has proved beyond a reasonable doubt each of the
> following elements with respect to a particular count:
>
> 1. That the defendant knowingly and intentionally issued and
>    transferred to another person a prescription, in the name of
>    the individual listed in the count, for the controlled substance
>    alleged in that count. A prescription may be issued and
>    transferred either by the defendant acting alone or in
>    combination with others acting on his behalf.
> 2. That the particular prescription was unauthorized, that is, not
>    for a legitimate medical purpose in the course of professional
>    practice.
> 3. That the defendant issued and transferred that particular
>    prescription knowing or intending that it was unauthorized.
>
> It is not enough for the government to prove that the defendant acted
> without a legitimate medical purpose or outside the usual course of his
> professional practice, but proof that a defendant did so is circumstantial
> evidence that may be used to prove knowledge of a lack of
> authorization.

> **In order to find the defendant guilty with respect to a particular charge in Counts 1 through 21, the government must prove beyond a reasonable doubt that the defendant knew or intended that his conduct was unauthorized with respect to that particular count.**

[ECF No. 199, PageID.4047-48 (emphasis added)]. The Court clearly instructed the jury on the *mens rea* necessary to prove guilt and the type of evidence that can be considered to determine that the government had met its burden. Therefore, Shelton's motion for new trial is DENIED.

### 4.  There was no Sixth Amendment Violation.

Shelton's Sixth Amendment claim is without merit. The Sixth amendment requires "[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him." U.S.C.A. Const.Amend. 6. While Shelton cites case law that stands for the proposition that criminal defendants are entitled to a "face-to-face meeting with the witnesses appearing before the trier of fact[,]" [ECF No. 205, PageID.4157 quoting *Maryland v. Craig*, 497 U.S. 836 (1990)] Shelton admits that the right to face-to-face meeting is not absolute and may be limited where "denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise preserved." *Id*. at PageID.4157-58. At the outset, the decision to require masking was clearly justified by public policy. Shelton's trial took place while safeguards against Covid-19 pandemic were still in effect. See E.D. Mich. Administrative Order 23-AO-005

(Feb. 2, 2023). This order stated "[e]ach judge has the right to direct those in the courtroom to wear masks." *Id*. Further, the Sixth Circuit declared in *United States v. Smith*, 2021 WL 5567267, at 2 (6th Cir. Nov. 29, 2021) (quoting Morgan v. Bunnell, 24 F.3d 49, 51 (9th Cir. 1994)) that "trial courts have inherent authority, and even 'grave responsibility,' to determine what safety measures are necessary to protect the judge, court personnel, the parties, the lawyers, the jurors, and the audience in and around the courtroom."  It was not just this Court's right, but its duty to take all necessary precautionary measures to prevent the transmission of a highly contagious and life-threatening illness and enable the efficient flow of trial.

Shelton could have raised an objection to the Court's decision to require masking at the time of trial but failed to do so. In light of Shelton's failure to raise such an objection and the public policy supporting the Court's decision, Shelton is not entitled to a new trial on this basis and his motion for new trial is DENIED.

In light of the foregoing,

IT IS SO ORDERED that Defendant's Motion for Judgement of Acquittal or For New Trial [ECF No. 205] is DENIED.

SO ORDERED.

s/Denise Page Hood
United States District Judge

Dated: August 26, 2024